UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| In re | Case No. 14-10421-MLB |
| CASEY R. INGELS, | |
| Defendant. | |
| | |
| JOHN S. PETERSON, as Bankruptcy Trustee, | Adversary No. 14-01387-MLB |
| Plaintiff, | |
| vs. | DEFENDANT'S TRIAL BRIEF |
| CASEY R. INGELS, | |
| Defendant. | |

Casey R. Ingels, Defendant ("Mr. Ingels" or "Defendant"), by and through counsel,

J. Todd Tracy, Jamie J. McFarlane and The Tracy Law Group PLLC, hereby presents his trial

brief.

## **INTRODUCTION**

The Plaintiff, Chapter 7 Trustee John Peterson, has alleged that the Defendant

committed a false oath under Section 727(a)(4)(A) based upon statements the Defendant made

DEFENDANT'S TRIAL BRIEF- 1

**THE TRACY LAW GROUP** PLLC
720 Olive Way, Suite 1000
Seattle, WA 98101
206-624-9894 phone / 206-624-8598 fax

at his 341 Meeting relating to the MJ Ray Ingels Irrevocable Trust. The Plaintiff's Pretrial Statement, Docket Entry #32, states the issue, "Did the Defendant knowingly and fraudulently provide false statements under oath at the 341 meeting held on March 11, 2014, regarding the funding of the MJ Ray Ingels Family Irrevocable Trust, property at 9830 Dekoven Lakewood, Washington, transfers of property to and from the trust and to MJB Consulting LLC and/or his knowledge of MJB Consulting, LLC?" The scope of the trial should be limited to the Plaintiff's Pretrial Statement and the specific factual allegations in the Plaintiff's Complaint that the Defendant has had notice of in order to avoid any unfair prejudice to the Defendant.

At the 341 Meeting, The Plaintiff and the Defendant found it very difficult to communicate with each other. The Plaintiff's questioning was confusing, open-ended, and vague. The Defendant repeatedly asked if his answers were clear and offered additional information beyond the questions asked. The Defendant did his best to answer the questions of the Plaintiff truthfully and clarify his answers once he could decipher what the Plaintiff was asking or realized that his answers could be perceived as untruthful. The Defendant did his best to make sure he testified truthfully.

This adversary case, as alleged in the Plaintiff's Complaint, is limited to the Defendant's answers at the 341 Meeting regarding the MJ Ray Ingels Irrevocable Trust. The Defendant has never held an interest in the MJ Ray Ingels Irrevocable Trust and the Defendant has never served as trustee of the Irrevocable Trust.

At the 341 Meeting, the Defendant told the Plaintiff that the MJ Ray Ingels Irrevocable Trust was never funded based upon the lack of assets in the Irrevocable Trust with equity.

DEFENDANT'S TRIAL BRIEF- 2

**THE TRACY LAW GROUP** PLLC
720 Olive Way, Suite 1000
Seattle, WA 98101
206-624-9894 phone / 206-624-8598 fax

Only moments after stating the Irrevocable Trust had no assets and was not funded, without an additional question posed by the Trustee, the Defendant clarified that the Irrevocable Trust had no assets with equity available. He stated that the Irrevocable Trust held one parcel of real property that has no equity available for creditors. This parcel of real property that was purchased and conveyed to the Irrevocable Trust in 2009 is not property of the bankruptcy estate and the Plaintiff has no evidence to show otherwise.

The testimony of the Defendant will show that he had no incentive to commit fraud based upon his lack of an interest in the Irrevocable Trust and the lack of equity in the real property held by the Irrevocable Trust, especially, considering the likelihood of a default due to fact that the entire principal balance was coming due on January 1, 2015. The audio recording of the 341 Meeting makes it clear that the Defendant clarified his response moments later without additional questioning once he realized that the Trustee wanted to know about the underwater property held by the Irrevocable Trust. The Defendant did not view the Dekoven Property held by the Irrevocable Trust as an asset because he never held an interest in the Irrevocable Trust and there was no equity available in the Dekoven Property held by the Irrevocable Trust.

**UNDISPUTED FACTS**

1. Mr. Ingels filed a Chapter 7 bankruptcy petition in this Court on January 23, 2014, under Case No. 14-10421-MLB.

2. The 341 examination was held on March 11, 2014 and no creditors were present.

3. After receiving two extensions of the objection to discharge deadline, the Chapter 7 Trustee, John Peterson, filed an adversary complaint on September 29, 2015, under Case

DEFENDANT'S TRIAL BRIEF- 3

**THE TRACY LAW GROUP** PLLC
720 Olive Way, Suite 1000
Seattle, WA 98101
206-624-9894 phone / 206-624-8598 fax

No. 14-01387-MLB, alleging that Mr. Ingels made material misstatements in the 341 examination regarding the MJ Ray Ingels Irrevocable Trust, and asking the Court to deny a discharge under 727(a)(4)(A) of the Bankruptcy Code.

4. The Defendant's Answer denies that he gave a false oath.

5. The Plaintiff's Pretrial Statement, Docket Entry #32, states the issue of law as "Did the Defendant knowingly and fraudulently provide false statements under oath at the 341 meeting held on March 11, 2014, regarding the funding of the MJ Ray Ingels Family Irrevocable Trust, property at 9830 Dekoven Lakewood, Washington, transfers of property to and from the trust and to MJB Consulting LLC and/or his knowledge of MJB Consulting, LLC?

5. Trial is set for June 8, 2015. The Trustee has listed only two witnesses: himself and the Defendant.

## PERTINENT FACTS AND PROCEDURAL HISTORY.

### Pre-bankruptcy background

Mr. Ingels was formerly married to Gwendolyn J. McMurtrey; they were divorced on June 8, 2009. In 2009, after the divorce, the Defendant created the MJ Ray Ingels Irrevocable Trust (" Irrevocable Trust") for the benefit of the couple's two young sons, as required by the Decree of Dissolution.

The Decree of Dissolution requires that eight properties be transferred into the Irrevocable Trust for the boys' benefit. The Irrevocable Trust's goal was to use cash flow from the properties to pay for the mortgages on two subsequent properties that the

DEFENDANT'S TRIAL BRIEF- 4

**THE TRACY LAW GROUP** PLLC
720 Olive Way, Suite 1000
Seattle, WA 98101
206-624-9894 phone / 206-624-8598 fax

Case 14-01387-CMA   Doc 38   Filed 06/01/15   Ent. 06/01/15 23:10:42   Pg. 4 of 22

Defendant and his ex-wife were in the process of purchasing for the benefit of the Irrevocable Trust.

On November 15, 2009, the Defendant created the Irrevocable Trust. Tricia Yue was named the Trustee of the Irrevocable Trust, and M. Ingels and J. Ingels, the Defendant's sons, were listed as beneficiaries of the Irrevocable Trust. As indicated in the Irrevocable Trust, the Grantor, Casey Ingels, declared pursuant to the Irrevocable Trust language that the Irrevocable Trust cannot be revoked at any time by the Grantor. The Defendant decided to use Tricia Yue as Trustee of the Irrevocable Trust based upon his experience with her in the legal field while she was working as a paralegal for Jack Connelly at the Law Offices of Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim. Mr. Ingels met Ms. Yue while working as an attorney at the same firm. Based upon Ms. Yue's experience in real estate transfers, Mr. Ingels trusted her to properly transfer real property pursuant to the Decree of Dissolution.

On December 3, 2009, by Special Warranty Deed, the Grantors of the Living Trust of James R. Paulson and Marijane L. Paulson ("Note Holders") conveyed real property located at 9830 Dekoven Dr. SW, Lakewood, Washington ("Dekoven Property") to Tricia Yue, as Trustee of the Irrevocable Trust. Mr. Ingels had no previous connection with the Note Holders. In exchange for the Special Warranty Deed on the Dekoven Property, the Trustee of the Irrevocable Trust, Ms. Yue, executed a Deed of Trust for the Note Holders, securing payment of $612,000.00 with interest due and payable in full on January 1, 2015, and Mr. Ingels contributed a down payment in the amount of $68,000.00 in order to complete the purchase. Any interest Mr. Ingels had in the $68,000 down payment made in

THE **TRACY LAW GROUP** PLLC
720 Olive Way, Suite 1000
Seattle, WA 98101
206-624-9894 phone / 206-624-8598 fax

2009 was lost the moment the Irrevocable Trust was granted the Dekoven Property. The underlying promissory note ("Promissory Note") required interest only payments until the due date of January 1, 2015, leaving the entire principal balance due and payable on January 1, 2015. Mr. Ingels did not attend the closing of the Dekoven Property, nor did he sign any of the transfer documents, as he did not have any authority to do so, as he was not the Trustee of the Irrevocable Trust. The total amount of secured debt owed against the Dekoven Property at the time of filing the underlying bankruptcy case was in excess of $612,000.00 due to the fact that no principal payment amount was made on the Promissory Note or required.

Addressing the other alleged property interest in the factual allegation made by the Plaintiff regarding MJB Consulting, in 2011, Kathryn Hanson created MJB Consulting, an Idaho Limited Liability Company. The Debtor has no ownership interest in MJB Consulting, LLC, and never has. The Debtor was not aware that MJB Consulting, LLC transferred the Dekoven Property, only that the asset had been transferred to an LLC. The Debtor had performed consulting work for the MJB Consulting, LLC, as an independent contractor.

The Defendant will testify that he never has been a beneficiary of the Irrevocable Trust and never was in charge of the disposition of its assets. He will also testify that he has never had an interest in MJB Consulting, LLC. The Defendant did make interest only payments on the Promissory Note that occurred more than two years prior to the bankruptcy filing. As the Debtor's financial situation worsened, he ceased making payments on the Promissory Note. The Defendant's testimony will show that he had absolutely

**THE TRACY LAW GROUP** PLLC
720 Olive Way, Suite 1000
Seattle, WA 98101
206-624-9894 phone / 206-624-8598 fax

nothing to gain from making the alleged false oath relating to his testimony about the Irrevocable Trust, demonstrating that there was no fraudulent intent by the Defendant relating to any alleged false oath.

**Bankruptcy background**

The Defendant filed a Chapter 7 bankruptcy in this Court on January 23, 2014. Prior to filing his bankruptcy case, the Defendant disclosed the existence of the Irrevocable Trust to his bankruptcy counsel, Noel Shillito. The Defendant did not list the Irrevocable Trust in his original bankruptcy schedules based upon the advice of his counsel because he has never held an interest in the Irrevocable Trust that was established in 2009. A 341 Meeting was held on March 11, 2014. The Trustee asked the Defendant a number of questions about the Irrevocable Trust, including questions about transfers of property to and from the Irrevocable Trust, and transfers to an LLC from the Irrevocable Trust.

Mr. Ingels answered the Trustee's questions truthfully, to the best of his ability. He and the Trustee found it very difficult to communicate with each other. The Trustee asked whether the MJ Ray Irrevocable Trust had any assets, and the Defendant said "no," because he had no financial interest in the DeKoven house, he wasn't a beneficiary of the Irrevocable Trust, and he did not transfer the Dekoven house into the Irrevocable Trust. Without a subsequent question posed, as part of the same answer to the Plaintiff's question about whether the Irrevocable Trust had any assets, the Defendant clarified his response that the Irrevocable Trust had real estate located in "Lakewood" and "the piece of property in Lakewood has no equity in it."

DEFENDANT'S TRIAL BRIEF- 7

**THE TRACY LAW GROUP** PLLC
720 Olive Way, Suite 1000
Seattle, WA 98101
206-624-9894 phone / 206-624-8598 fax

Six months after the creditors' exam, the Defendant learned that the manager of MJB Consulting had transferred the Dekoven property to MJB Consulting on September 4, 2014 by quitclaim deed.   As he stated at the 341 Meeting, Mr. Ingels did not know which entity transferred the Dekoven Property, as he had no part in any of the transfers referenced by the Plaintiff.   It was the Defendant's understanding that the purpose of that transfer was to allow Kathryn Hanson, who had started living in the Property and was making the payments, to have the benefit of those payments.  As the Defendant explained at the 341 meeting, he and Ms. Hanson have a child together, but they are not in a personal relationship.  Once Ms. Hanson realized that she would not be able to meet the due date for payment in full on the Promissory Note for the Dekoven Property, she then transferred the Dekoven Property back to the Irrevocable Trust.  It is the Defendant's understanding that this transfer by MJB Consulting from the Irrevocable Trust and the transfer back to the Irrevocable Trust by Ms. Hanson was never authorized by Ms. Yue, as Trustee of the Irrevocable Trust.

After receiving two extensions of the discharge deadline, on September 29, 2014, the Trustee filed an adversary complaint against the Defendant, asking the Court to deny a discharge under Section 727(a)(4)(a).  He alleges that Defendant knowingly and fraudulently gave a false oath or account at the creditors' exam, by making material misstatements about the funding of the Irrevocable Trust, the DeKoven property,  transfers of the Property to and from the Trust and to MJB Consulting, and about his knowledge of MJB Consulting. Adversary Complaint, Para. 8.

**THE TRACY LAW GROUP** PLLC
720 Olive Way, Suite 1000
Seattle, WA  98101
206-624-9894 phone / 206-624-8598 fax

The Defendant denies that he gave a "false oath" within the meaning of Section 727(a)(4)(A) at the 341 meeting.

## **DEFENDANT'S POSITION**

1. The Defendant did not knowingly or fraudulently make a false oath or account. He answered the Trustee's questions truthfully at the 341 exam, and has done so throughout the course of his bankruptcy. The Defendant had no incentive to fraudulently conceal an asset that he has never had an interest in, considering the fact that the asset had no equity beyond the secured creditor's interest with a balloon payment coming due on January 1, 2015 to the Note Holders that he could never satisfy and the Irrevocable Trust could never satisfy due to its lack of funds.

2. The Defendant did not list the Irrevocable Trust's Dekoven Property as an asset on Schedule A, because it belonged to the Irrevocable Trust and he was not a beneficiary of the Irrevocable Trust, nor could he ever be. The Chapter 7 Trustee asked Mr. Ingels whether any assets were held by the Irrevocable Trust, and Mr. Ingels answered, "no" and then clarified the first part of his answer that the Irrevocable Trust had an underwater piece of real property in Lakewood that he did not consider to be an asset. This clarification about the Dekoven Property being held in the Irrevocable Trust was done without any subsequent questions by the Trustee. The Trustee then asserted that the Irrevocable Trust did have assets. Mr. Ingels explained that he "misspoke then," because he did not believe that underwater real property was an "asset," since it lacked any equity available for creditors and it was not part of his bankruptcy estate. At no time did the Plaintiff ask if the Defendant made a down payment on the Dekoven Property or how the Dekoven Property was

THE **TRACY LAW GROUP** PLLC
720 Olive Way, Suite 1000
Seattle, WA 98101
206-624-9894 phone / 206-624-8598 fax

purchased. At the time of the bankruptcy filing, the Dekoven Property had a taxed assessed value of $505,300.00 and an amount owing of at least $612,000.00. Ultimately, the trustee of the Irrevocable Trust, Tricia Yue, executed a deed-in-lieu of foreclosure at the request of the Note Holders due to the Irrevocable Trust's inability to make payments due to a lack of funds and the entire principal balance of the Promissory Note being due.

4. When listening to the Defendant's disjointed testimony at the 341 Meeting, it is important to note that Mr. Ingels is a Disabled Veteran. He suffered a traumatic brain injury while serving with the U.S. Army Rangers, for which he received a substantial disability rating from the Veterans Administration. He has received years of speech and cognitive therapy. Although the Defendant often operates at a high level, his disability requires accommodation and can return under stress. The stress of the 341 exam may have added to his difficulty in responding to the Trustee's questions in a manner that the Trustee understood.

## LEGAL ISSUE

Can the Trustee prove by a preponderance of the evidence, under 11 U.S.C. § 727(a)(4)(A), that the Defendant knowingly and fraudulently, in or in connection with the case, made a false oath or account related to the MJ Ray Ingels Irrevocable Trust that would except his debts from discharge?

## ANALYSIS

Exceptions to dischargeability "should be strictly construed in order to serve the Bankruptcy Act's purpose of giving Defendants a fresh start." *6 Collier on Bankruptcy* ¶727.01[4] at 727-12, 16 ed. 2015, Resnick Alan N., Sommer Henry J. Section 727's denial

DEFENDANT'S TRIAL BRIEF- 10

THE **TRACY LAW GROUP** PLLC
720 Olive Way, Suite 1000
Seattle, WA 98101
206-624-9894 phone / 206-624-8598 fax

of discharge is construed liberally in favor of the Defendant and strictly against those objecting to discharge. *In re Adeeb*, 787 F.2d 1339, 1342 (9th Cir. 1986).

The burden of proof in an adversary proceeding objecting to discharge under §727 is preponderance of evidence. *Grogan v. Garner*, 498 U.S. 279, 287-288, 112 L. Ed. 2d 755, 111 S. Ct. 654 (1991); *In re Cox*, 41 F.3d 1294, 1297 (9th Cir. 1994).

"The reasons for denial of a discharge must be real and substantial rather than technical and conjectural[.]" 6 Collier on Bankruptcy ¶ 727.01[4], 727-12, Alan N. Resnick & Henry J. Sommer, eds., 16th ed (2010).

"[A] total bar to discharge is an extreme penalty." *Ditto v. McCurdy*, 510 F.3d 1070, 1079 (9th Cir. 2007), *citing Rosen v. Bezner,* 996 F.2d 1527, 1534 (3d Cir. 1993). Those objecting to discharge "bear[ ] the burden of proving by a preponderance of the evidence that [the Defendant's] discharge should be denied." *In re Retz*, 606 F.3d 1189, 1196 (9th Cir. 2010), *citing In re Khalil*, 379 B.R. at 172.

The trustee cannot meet his burden of proof.

## A. THE TRUSTEE MUST ESTABLISH EACH OF THE FOUR ELEMENTS OF 727(a)(4) BY THE PREPONDERANCE OF THE EVIDENCE.

In order to prevail on a 727(a)(4) claim, the plaintiff must establish, by a preponderance of the evidence, each of four elements: "(1) the Defendant made a false oath in connection with the case; (2) the oath related to a material fact; (3) the oath was made knowingly; and (4) the oath was made fraudulently." *In re Retz*, 606 F.3d at 1197, 2010 (9th Cir. Or. 2010).

DEFENDANT'S TRIAL BRIEF- 11

**THE TRACY LAW GROUP** P.L.L.C.
720 Olive Way, Suite 1000
Seattle, WA 98101
206-624-9894 phone / 206-624-8598 fax

"In keeping with the 'fresh start' purposes behind the Bankruptcy Code, courts should construe §727 liberally in favor of Defendants and strictly against parties objecting to discharge." *In re Bernard,* 96 F.3d 1279, 1281 (9th Cir. 1996). This does not alter the burden on the objector, but rather means that "actual, rather than constructive, intent is required" on the part of the Defendant. *In re Khalil*, 379 B.R. 163, 172 (BAP 9th Cir. C.D. Cal. 2007).

While the creditor bears the ultimate burden of proof under 11 U.S.C.S. § 727(a)(4), once the creditor has demonstrated an omission or false statement, the burden shifts to the debtor to show that the omission was the result of an honest mistake, or to otherwise provide a credible explanation for the false statement. *In re Ferre*, 2006 Bankr. LEXIS 2833, 14 (Bankr. N.D. Cal. 2006).

### The Defendant Did Not Make a False Oath in Connection With the Case, Within the Meaning of §727(a)(4)(A).

The Plaintiff asserts that the Defendant made false statements at the creditors' exam relating to the Irrevocable Trust. The Defendant strongly denies this. The Trustee asserts that, when he asked Mr. Ingels to disclose any trust that he had created, "the Defendant did not do so until specifically asked about the MJ Ray Ingels Irrevocable Trust." Plaintiff's Response to Defendant's First Set of Interrogatories, Int. No. 1.

The Trustee asserts that the Defendant made the following statements, and that these statements were false:

The MJ Ray Ingels Trust was never funded or moved forward with.

Properties were to be placed in the trust but that has yet to happen due to lack of equity in the properties.

The MJ Ray Ingels Trust never had any assets.

DEFENDANT'S TRIAL BRIEF- 12

**THE TRACY LAW GROUP** PLLC
720 Olive Way, Suite 1000
Seattle, WA 98101
206-624-9894 phone / 206-624-8598 fax

The property in Lakewood does not have any equity in it.

The property was transferred by Tricia Yue to an LLC.

The Trustee of the MJ Ray Ingels Trust has no relationship to the Defendant.

$680,000 is owed on the Lakewood Property.

*Id.*

The Trustee asserts that he knows, "from public documents," and the Defendant's subsequent statements, that these statements were not true. <u>Plaintiff's Response to Defendant's Int. No. 2</u>. His response does not state how he knows that these statements were not true, or in what way they were not true. Conveniently, the Trustee ignores the majority of the Mr. Ingels' answer to the question about whether the Irrevocable Trust had any assets. Mr. Ingels clarified the first part of his answer that there were no assets in the Irrevocable Trust by stating that the Trust did have a piece of real property in Lakewood that had no equity in it.

Intent, under 727(a)(4)(A) "can be established by circumstantial evidence," and "statements made with reckless indifference to the truth are regarded as intentionally false." *In re Korte,* 262 B.R. 464, 474 (BAP 8th Cir. 2001). Thus, in *Korte*, the BAP affirmed the bankruptcy court's denial of discharge under 727(a)(2) and (4). In that case, the Defendant's statements were untruthful because he failed to disclose, on his schedules and in his testimony at the first meeting of creditors, the interests which he retained in property that was transferred to a trust. In *Korte*, the Defendant retained actual possession of much of that property and continued to use it both personally and in his business after the case filing.

DEFENDANT'S TRIAL BRIEF- 13

THE **TRACY LAW GROUP** PLLC
720 Olive Way, Suite 1000
Seattle, WA 98101
206-624-9894 phone / 206-624-8598 fax

In contrast to *Korte*, Mr. Ingels' testimony at the 341 exam was truthful. Mr. Ingels did disclose that the Irrevocable Trust held real property in Lakewood with no equity available. While Mr. Ingels could have done a better job answering the questions in order to create less confusion, he corrected himself during the same answer to the Trustee's question about assets held by the Irrevocable Trust. Considering the allegations relating to the specific testimony provided at the 341 exam by the Defendant, there were no misstatements or omissions that would satisfy the first element required to be proven by a preponderance of the evidence, a false oath.

In *Olympic Coast Inv., Inc. v. Wright,* 364 B.R. 51 (Bankr. D. Mont. 2007), a creditor sought a denial of Defendants' discharge under § 727(a)(4)(A). The Defendants had testified they were not involved in certain businesses within six years preceding their Chapter 13 petition, and that they had transferred certain property. The bankruptcy court dismissed the creditor's complaint. It noted that the businesses and assets from their Chapter 11 case, which the Defendants had omitted from their original Chapter 13 petition, all involved defunct or valueless businesses. The court concluded that none of the omitted assets had any value to the estate. At the 2004 exam, the creditor's counsel asked whether the Defendant had an accountant with knowledge of his financial affairs, and Defendant had answered "no." The creditor contended that Defendant made a false oath by failing to disclose the identity of his accountant, Dick Swenson. The bankruptcy court disagreed, and held that the answer was not false. *In re Wright,* 364 B.R. at 77. The Defendant testified, at the trial of the creditor's §727 complaint, that accountant Swenson had not been his accountant for years. The court noted that the creditor offered no other evidence that the

**THE TRACY LAW GROUP** PLLC
720 Olive Way, Suite 1000
Seattle, WA 98101
206-624-9894 phone / 206-624-8598 fax

Defendant had an accountant with current knowledge of his finances. Therefore, the court found it credible and reasonable for the defendant to answer "No" when asked if he presently had an accountant. *Id.*

Furthermore, the creditor "did not show that it asked a logical follow-up question, such as "Have you ever hired an accountant?" *Wright*, 364 B.R. 77 "It was Larry's oath to answer the question he was asked truthfully, and he did. The Court finds that OCI failed its burden to show that the third alleged oath was false, or that it was made knowingly and fraudulently, or that it detrimentally affected the administration of the estate."

In Mr. Ingels case, he did not commit a false oath as he provided testimony at the 341 meeting that the Irrevocable trust had a piece of real estate located in Lakewood that had no equity in it. The Plaintiff in this case has not demonstrated that Mr. Ingels made a false oath when considering the entirety of Mr. Ingels' answers at the 341 Meeting to the questions posed. If the Plaintiff wanted to know about more specifics about the Dekoven Property held by the Irrevocable Trust and how it was purchased, he could have asked the appropriate question. Considering all of the testimony provided at the 341 Meeting, the Plaintiff will be unable to satisfy the first element required under Section 727(a)(4)(A), demonstrating a false oath was committed by a preponderance of the evidence.

**The Trustee Cannot Show Materiality, within the Meaning of §727(a)(4)(A).**

Section 727(a)(4)(A) requires that the relevant false oath relate to a material fact. *In re Retz*, 606 F.3d 1189, 1198 (9th Cir. Or. 2010). An omission or misstatement that "detrimentally affects administration of the estate" is material. *Id.*

DEFENDANT'S TRIAL BRIEF- 15

**THE TRACY LAW GROUP** PLLC
720 Olive Way, Suite 1000
Seattle, WA 98101
206-624-9894 phone / 206-624-8598 fax

"Materiality is broadly defined. A fact is material if it bears a relationship to the Defendant's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the Defendant's property." *In re Wills*, 243 B.R. 58, 62 (BAP 9th Cir. 1999). (Held: bankruptcy court erred by denying creditors' motion for summary judgment under 727(a)(4); case remanded for a determination of whether Defendants' many false statements and whether omissions were material.

'The fundamental purpose of § 727(a)(4)(A) is to insure that the trustee and creditors have accurate information without having to conduct costly investigations.' That said, a false statement or omission that has no impact on a bankruptcy case is not material and does not provide grounds for denial of a discharge under § 727(a)(4)(A)." *In re Khalil*, 379 B.R. 163, 172 (BAP 9th Cir. 2007). [1]

Any alleged omissions or misstatements which Mr. Ingels made at the 341 meeting were not material, because they did not detrimentally affect administration of his bankruptcy estate. The Defandant disclosed the Dekoven Property at the Meeting of Creditors. The Defendant disclosed that the Dekoven Property had a note against it at the Meeting of Creditors. The Plaintiff had the ability to request further information about the Dekoven Property and the Irrevocable Trust based upon the testimony provided at the Meeting of Creditors. The Trustee will be unable to demonstrate how the alleged misstatements or omissions were detrimental to the bankruptcy estate, considering the fact that the real property held by the Irrevocable Trust was disclosed at the Meeting of Creditors.

---

[1] Affirmed by *In re Khalil*, 578 F.3d 1167 (9th Cir. 2009).

DEFENDANT'S TRIAL BRIEF- 16

**THE TRACY LAW GROUP** PLLC
720 Olive Way, Suite 1000
Seattle, WA 98101
206-624-9894 phone / 206-624-8598 fax

At some point, a Chapter 7 Trustee needs to ask specific questions if he wants answers beyond the disclosures required of a debtor. A Chapter 7 trustee's failure to exercise his duty to investigate and ask the proper follow-up questions should not result in a finding that a debtor detrimentally affected the bankruptcy estate because he did not disclose more than what was asked or required of him.

**The Trustee Cannot Show Knowledge within the Meaning of §727(a)(4)(A).**

The third element required by § 727(a)(4)(A) is that the defendant acted knowingly in making the false oath. *In re Retz*, 606 F.3d 1189 (9th Cir. 2010), *citing In re Roberts*, 331 B.R. at 882. A person acts "knowingly" if he or she acts deliberately and consciously. *Roberts* at 883-884, citing BLACK'S LAW DICTIONARY 888 (8th ed. 2004).

"The requirement that the false statement be 'knowingly' made mandates preponderating proof that the debtor acted 'deliberately and consciously.' An action is careless if it is 'engaged in without reasonable care.' This is a negligence standard, not a knowing misconduct standard. A false statement resulting from ignorance or carelessness does not rise to the level of 'knowing and fraudulent.' *Roberts,* 331 B.R. at 883.

In *Roberts*, the debtor failed to disclose rent, certain sale proceeds and certain assets in his initial disclosure. After the creditor filed an objection to discharge, debtor amended the statement to include the missing information, but the bankruptcy court denied a discharge under 727(a)(4). The BAP reversed, on two grounds. First, the bankruptcy court didn't find that the material nondisclosures in the debtor's statement were knowing. Second, the bankruptcy court didn't find that the debtor had an intention to defraud; therefore, it didn't find that he made his nondisclosures "knowingly." Id. at 884.

THE **TRACY LAW GROUP** PLLC
720 Olive Way, Suite 1000
Seattle, WA 98101
206-624-9894 phone / 206-624-8598 fax

In this case, as in *Roberts*, the Defendant did not knowingly make a false oath.  Mr. Ingels will testify that he answered the Trustee's questions truthfully, to the best of his ability, and that any mistakes, misstatements or omissions were made without knowledge. Mr. Ingels believed that he was testifying truthfully and clarified his responses to make sure that they were truthful.

Mr. Ingel's case is also similar to *Meer v. Lilly*, 2012 Bankr. LEXIS 5817 (Bankr. D. Id. 2012). In *Meer*, a creditor had sued the debtor in a separate federal district court action, but debtor failed to list the claim on his bankruptcy schedules.  Creditor filed a complaint under 727(a)(4), arguing that the omission was a false statement.  The bankruptcy court disagreed and granted the debtor a discharge because he had amended his schedules to disclose the lawsuit. "While some of the statements might be technically false or in error, none appear to be material under all the facts and circumstances. More importantly, even if the statements were material, Plaintiff failed to prove the assertedly false or incomplete statements were made knowingly and fraudulently."  *Meer v. Lilly* at 5817-5818.

In *Rafsanjani v. Kuchecki*, 2010 Bankr. LEXIS 5045 (BAP 9th Cir. 2010), the bankruptcy court dismissed the creditor's objections to discharge even though there were numerous errors and deficiencies in the petition and schedules. For example, Defendant listed no vehicles on Schedule B although at the time he leased a 2004 Mercedes Benz; owned a second, older, Mercedes and owned a third car that was inoperable.

The BAP affirmed. It held that the Defendant's incorrect statements were not knowing and fraudulent, because "almost all the inaccuracies were corrected within a

THE **TRACY LAW GROUP** PLLC
720 Olive Way, Suite 1000
Seattle, WA  98101
206-624-9894 phone / 206-624-8598 fax

reasonable time and, considering Defendant's relatively forthright answers given at the §341(a) meeting, no inference of fraudulent intent can be taken." *Id.* at 8.

In Mr. Ingels' case, the alleged misstatements were clarified at the 341 Meeting within moments after he made the alleged statements and without any further questions being posed. Based upon the testimony provided by Mr. Ingels at the 341 Meeting, the Plaintiff will be unable to show that Mr. Ingels knowingly made the alleged misstatements.

**The Trustee Cannot Show Fraudulent Intent within the Meaning of §727(a)(4)(A).**

Section 727(a)(4)(A) "specifically requires that the debtor make a false oath or account'knowingly and fraudulently.'"*In re Khalil*, 379 B.R. 163, 174 (9th Cir. BAP 2007).[2]

To demonstrate fraudulent intent, plaintiffs bear the burden of showing that: (1) the debtor made a false statement or omission in bankruptcy schedules; (2) at the time the debtor knew they were false; and (3) the debtor made them with the intention and purpose of deceiving the creditors." *In re Retz*, 606 F.3d 1189, 1198-1199 (9th Cir. 2010). (Court of Appeals affirmed the denial of debtor's discharge. Debtor made many false oaths on his Schedules and SOFA; the false oaths related to material facts, and they were made knowingly and fraudulently.)

In contrast to *Retz*, the bankrtupcy court in *Roberts* failed to find that the debtor acted fraudulently. The debtor omitted certain assets from his schedules, but amended the schedules to include the missing information after the creditor objected to discharge. The bankruptcy court denied a discharge, but the BAP reversed. It held that the bankruptcy

---

[2] *Affirmed* by 578 F.3d 1167 (9th Cir. 2009).

**THE TRACY LAW GROUP** P.L.L.C.
720 Olive Way, Suite 1000
Seattle, WA 98101
206-624-9894 phone / 206-624-8598 fax

court erred because it did not find that the material nondisclosures in the debtor's statement were knowing, and did not find that he intended to defraud.

"The intent required for finding that the debtor has acted fraudulently under § 727(a)(4)(A) with respect to a false oath must be actual intent: constructive fraudulent intent cannot be the basis for the denial of a discharge." *Roberts*, 331 B.R. 876, 884, citing *In re Devers*, 759 F.2d 751, 753 (9th Cir. 1985).

Mr. Ingels' testimony at the 341 Meeting and actions in this case do not satisfy the fraud element required under Section 727(a)(4)(A). Mr. Ingels did his best to clarify his responses and offered more information to the Trustee than he was asked about. Mr. Ingles had no incentive to hinder, delay, or defraud creditors regarding the underwater Dekoven Property that he had no interest in. There was a balloon payment coming due on January 1, 2015, on the Promissory Note and the Irrevocable Trust did not have the ability to make payments so it was only a matter of time before it would be lost to foreclosure. Ultimately, Tricia Yue, as trustee of the Irrevocable Trust, executed a Deed-in-Lieu of Foreclosure due to the default under the Promissory Note. The Defendant had nothing to gain from the alleged false oaths, indicating his lack of fraudulent intent.

Another case addressing the fraud element, In *Baker v. Mereshian*, 200 B.R. 342 (BAP 9th Cir. Cal. 1996), the Defendants owed a creditor significant legal debts when they declared bankruptcy. The year before, the debtor husband, a real estate broker, transferred several pieces of real estate encumbered by debt to the secured creditors. Defendants failed to list the transfers on their schedules, but revealed all transfers to the creditor's representative at a meeting of creditors. The bankruptcy court dismissed the creditor's §727

DEFENDANT'S TRIAL BRIEF- 20

**THE TRACY LAW GROUP** PLLC
720 Olive Way, Suite 1000
Seattle, WA 98101
206-624-9894 phone / 206-624-8598 fax

complaint. The BAP affirmed, holding that the creditor failed to prove that the Defendants had a fraudulent intent when they transferred real estate to other creditors before the bankruptcy.

In Mr. Ingels' case, there was no failure to disclose a transfer to a trust in his schedules or in answering the questions posed by the Trustee at the Meeting of Creditors. At the 341 Meeting, Mr. Ingels did disclose why the Irrevocable Trust was setup, the fact that he did not hold an interest in the Irrevocable Trust, and the fact that the Irrevocable Trust held a piece of real property located in Lakewood that had no equity in it.

The *Mereshian* Court cited the holding of *In re Adeeb,* 787 F.2d 1339, 1342 (9th Cir. 1986)(stating that "discharge of debts may be denied under Section 727(a)(2)(A) only upon a finding of actual intent to hinder, delay, or defraud creditors"). In this case, it is clear that there is no intent to hinder, delay, or defraud creditors on the part of the Defendant, as he did not have any interest in the Irrevocable Trust and the property held by the Irrevocable Trust had no value. The Defendant had no incentive to hinder, delay, or defraud creditors regarding the underwater property held by the Irrevocable Trust.

Mereshian also cited 4 Collier on Bankruptcy, P 727.04[1] at 727-59 (15th ed. 1996) (stating that to deny a discharge under Section 727(a)(4), "the statement must contain matter which the Defendant knew to be false and the Defendant must have included them willfully with intent to defraud"). And *Mereshian* cited the holding that "Fraudulent intent may be established by circumstantial evidence, or by inferences drawn from a course of conduct." *Devers,* 759 F.2d 751, 753-54 (9th Cir. Mont. 1985). Thus, a court may look to all the surrounding facts and circumstances. 4 Collier, supra, P 727.02[3] at 727-16-17.

THE **TRACY LAW GROUP** PLLC
720 Olive Way, Suite 1000
Seattle, WA 98101
206-624-9894 phone / 206-624-8598 fax

Over the course of the Meeting of Creditors, the Defendant asked if his answers were clear or if the Trustee understood his answers in an effort to make sure the Trustee had what he needed after the Defendant clarified his testimony. This does not indicate conduct that the Defendant was attempting to hide or conceal assets held by the Irrevocable Trust. Considering all of the Defendant's testimony at the 341 Meeting, the Plaintiff will be unable to demonstrate that the Defendant had the requisite fraudulent intent needed to satisfy a claim under Section 727(a)(4)(A).

<u>**CONCLUSION**</u>

The Defendant respectfully requests the Court grant the Defendant a discharge. Mr. Ingels answered the Trustee's questions truthfully at the 341 Exam and clarified any inaccurate answers promptly. The Trustee cannot meet his burden of proving, by a preponderance of the evidence, that the Defendant knowingly and fraudulently, in or in connection with the case, made a false oath or account that would except his debts from discharge.

For the reasons stated above, the Defendant respectfully requests that the Court dismiss the Plaintiff's Complaint with prejudice; and grant a discharge to the Defendant.

RESPECTFULLY SUBMITTED THIS this 1st day of June 2015.

THE TRACY LAW GROUP PLLC

By ___*/s/ Jamie McFarlane*_____
  Jamie J. McFarlane, WSBA #41320
  Attorneys for Defendant Casey R. Ingels

THE **TRACY LAW GROUP** PLLC
720 Olive Way, Suite 1000
Seattle, WA 98101
206-624-9894 phone / 206-624-8598 fax